# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**ELLA MAE TALBOT,**

                           **Plaintiff,**

               **v.**

**CAROLYN W. COLVIN**
Acting Commissioner of Social
Security,

                          **Defendant.**

5:14-cv-879
(GLS)

_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group               HOWARD D. OLINSKY, ESQ.
300 S. State Street
Suite 420
Syracuse, NY 13202

**FOR THE DEFENDANTS:**
HON. RICHARD S. HARTUNIAN     DAVID B. MEYERS
United States Attorney            Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Ella Mae Talbot challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Talbot's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

In April 2007, Talbot filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging an onset date of September 28, 2001. (Tr.[1] at 236-46.) After her applications were denied, (*id.* at 145-56), Talbot sought reconsideration, and a hearing before an Administrative Law Judge (ALJ) was held on September 15, 2009. (*Id.* at 93-116.) On November 4, 2009, the ALJ issued an unfavorable decision and found that Talbot was not disabled. (*Id.* at 122-31.) On June 4, 2010, Talbot filed a secondary application for SSI, and the Commissioner found her disabled

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

as of that date. (*Id.* at 133.) Thereafter, at Talbot's request, the Appeals Council vacated and remanded the November 4, 2009 decision to the ALJ to further develop the record, obtain testimony from a vocational expert (VE), and prepare an exhibit list for the claimant. (*Id.* at 133-35.) On remand, the ALJ heard testimony from a VE, (*id.* at 78-91), and confined the relevant period for his disability determination from March 2, 2005 to June 3, 2010, (*id.* at 14). On August 29, 2012, the ALJ again issued an unfavorable decision finding that Talbot was not disabled and denying the requested benefits, (*id.* at 7-36), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Talbot commenced this action by filing her complaint on July 17, 2014 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. <u>Contentions</u>

Talbot contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 11-25.) Specifically, Talbot argues that the ALJ erred because his residual

functional capacity (RFC) determination, credibility finding, and step five assessment were not supported by substantial evidence. (*Id.*) The Commissioner opposes and asserts that the ALJ used the appropriate legal standards and his decision is also supported by substantial evidence. (Dkt. No. 12 at 5-22.)

## IV.  <u>Facts</u>

The court adopts the undisputed factual recitations of the parties and the ALJ.  (Dkt. No. 11 at 3-11; Dkt. No. 12 at 1; Tr. at 16-23.)

## V.  <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

## VI.  <u>Discussion</u>

---

[2]  42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.  As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

## A.    RFC Determination

Talbot argues that the ALJ erred in his RFC determination because the ALJ did not follow the treating physician rule and failed to consider her non-severe impairments.  (Dkt. No. 11 at 12-22.)  Additionally, Talbot asserts the ALJ failed to include a limitation for a knee condition identified by Kalyani Ganesh, a consultative examiner, and weigh the opinion of Roberto Rivera, another consultative examiner, who evaluated Talbot after the relevant period.  (*Id.*)  Finally, Talbot maintains the ALJ did not account for her obesity.  (*Id.*)  The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence, specifically, two consultative examination reports from Dr. Ganesh as well as Talbot's self-reported daily activity and conservative treatment regime.  (Dkt. No. 12 at 5-17.)

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).

An ALJ's RFC determination must be supported by substantial evidence[3] in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

### 1.    *Treating Physician Rule*

Talbot argues that the ALJ afforded little or no weight to the opinion of Nathan Keever, her treating physician.  (Dkt. No. 11 at 13-18.)  In his medical source statement, Dr. Keever reported that Talbot suffered from asthma and Type II diabetes.  (Tr. at 790.)  Dr. Keever opined that Talbot could only sit for less than two hours and stand for fifteen minutes at one time, had severe limitations in her ability to deal with work stress, experienced constant pain that interfered with her attention and concentration, and would be absent more than three times per month because of her impairments.  (*Id.* at 791-92.)  The Commissioner asserts that the ALJ did not have to afford controlling or substantial weight to Dr. Keever's restrictive opinion because it was inconsistent with other record evidence.  (Dkt. No. 12 at 7-8.)

---

[3] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). Provided the ALJ's reasoning and compliance with the regulation is clear, the ALJ does not need to engage in a "slavish recitation of each and every factor" under 20 C.F.R. § 404.1527(c). *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Here, the ALJ afforded little weight to Dr. Keever's opinion because it

was not supported by other medical evidence.  (Tr. at 21.)  In his most recent progress notes, Dr. Keever diagnosed Talbot with Type II diabetes, tendinitis with arthritis in her left shoulder, hypercholesterolemia, and hypothyroidism.  (*Id.* at 858.)  Other progress notes indicate that Dr. Keever also diagnosed Talbot with depression, chronic obstructive pulmonary disease (COPD), asthma, and obesity.  (*Id.* at 799, 801-04, 807, 813, 861.)  Notably, Dr. Keever opined that Talbot was seriously limited in certain job duties by her depression.  (*Id.* at 792-95.)  However, the record reflects that this impairment did not restrict Talbot to that degree because she never sought mental health counseling and admitted that she had the ability to work despite her depression.  (*Id.* at 101-02, 274); *see Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (holding that a claimant's failure to seek medical treatment "seriously undermine[d]" his contention of disability); *Stroud v. Comm'r of Soc. Sec.*, No. 13 Civ. 3251, 2014 WL 4652581, at *11 (S.D.N.Y. Sept. 8, 2014) (same).

        As for the physical impairments, Dr. Keever opined that Talbot was physically disabled.  (Tr. at 790-92).  Talbot, however, reported that she could care for her personal hygiene, watch her grandchildren, and complete basic chores including food shopping, cooking, and laundry. (*Id.*

at 68-69, 102-05, 307-10).  Furthermore, Dr. Keever's disability finding is inconsistent with his progress notes as they are largely unremarkable and mainly contain Talbot's subjective reports of pain.  (*Id.* at 797-837, 858-72.) Talbot points to her hysterectomy[4] and oophorectomy[5] to demonstrate that Dr. Keever's notes are not "generally normal," as the ALJ characterizes them.  (*Id.* at 21.)  However, the Commissioner correctly asserts that Talbot did not allege that the conditions underlying her surgeries limited her ability to work.  (*Id.* at 262, 295; Dkt. No. 12 at 11.)  In any event, these surgeries only temporarily modified Talbot's abilities.  (Tr. at 500-616); *see* 42 U.S.C. § 416(i)(1) (requiring disability to last or be expected to last a continuous period of at least twelve months).

Furthermore, the ALJ did not err by failing to list all of the factors under 20 C.F.R. § 404.1527(c) when considering the weight to give Dr. Keever's opinion.  *See Atwater*, 512 F. App'x at 70.  As gleaned from the ALJ's decision, he had good reasons to afford little weight to the opinion, *see Petrie*, 412 F. App'x at 407, namely, Dr. Keever's disability finding was

---

[4] A hysterectomy is the surgical removal of the uterus.  *See* Dorland's Illustrated Medical Dictionary 812 (28th ed.1994).

[5] An oophorectomy is the surgical removal of the ovaries.  *See* Dorland's Illustrated Medical Dictionary 1179 (28th ed.1994).

inconsistent with his own progress notes, Talbot's function report, and the

two consultative reports from Dr. Ganesh, who personally examined

Talbot.  (Tr. at 307-10, 419-28, 706-15, 797-837, 858-72.)  Accordingly, the

ALJ properly followed the treating physician rule.

     2.    *Non-Severe Impairment*

Talbot next asserts that the ALJ erred by failing to consider her non-

severe impairment of depression in the RFC determination.  (Dkt. No. 11 at

17-18.)  The Commissioner contends that the ALJ properly found that her

depression was not severe at step two.  (Dkt. No. 12 at 15-17.)

It is axiomatic that the ALJ is required to consider a plaintiff's mental

impairments, even if not severe, in formulating the RFC.  *See* 20 C.F.R.

404.1545(a)(2); *see, e.g.*, *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d

Cir. 2012) (explaining remand is necessary if non-severe mental

impairments are not considered in the RFC determination); *Rookey v.

Comm'r of Soc. Sec.*, No. 7:14-cv-914, 2015 WL 5709216, at *4 (N.D.N.Y.

Sept. 29, 2015) (remanding with direction to the ALJ to discuss the

plaintiff's mental limitations and to consider his mental abilities in

formulating the RFC); *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d

Cir. 1995) (holding the combined effect of a claimant's non-severe and

severe impairments must be considered).

Although the Commissioner misdirects his arguments to the step two analysis, the ALJ considered Talbot's depression in making his RFC determination. (Tr. at 21.) The ALJ evaluated both Dr. Keever's opinion and Talbot's testimony regarding the limiting effects of her depression, but rejected them, as discussed above and below, as unsubstantiated by record. (*Id.*) Accordingly, the ALJ did not fail to consider Talbot's depression in his RFC determination.

### 3. Dr. Ganesh's Opinion

Talbot argues that the ALJ did not give the purported "great weight" to consultative examiner Dr. Ganesh's opinion because the knee impairments she identified were not accounted for in the RFC determination. (Dkt. No. 11 at 18-19.) The Commissioner counters and dismisses Talbot's argument because Dr. Ganesh's opinion does not support a more restrictive RFC determination. (Dkt. No. 12 at 10.)

The ALJ found that Talbot had the RFC to perform light work except she had to avoid concentrated exposure to temperature extremes, humidity, and respiratory irritants because of her asthma. (Tr. at 19.) Dr.

Ganesh identified crepitus[6] in both of Talbot's knees, but never suggested a specific limitation for this impairment.  (*Id.* at 421-22, 709.)  Rather, Dr. Ganesh opined that Talbot was only restricted to a mild to moderate limitation in walking and climbing.  (*Id.*)  Talbot fails to show an inconsistency between Dr. Ganesh's opinion and the ALJ's RFC determination.  *See Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (holding the claimant bears the burden of proof in the first four steps).  Accordingly, the ALJ made no error with regard to Dr. Ganesh's opinion.

### 4.  Dr. Rivera's Opinion

Talbot also argues that the ALJ failed to weigh Dr. Rivera's opinion which recommended more restrictive limitations than the ALJ's RFC determination.  (Dkt. No. 11 at 19-20.)  The Commissioner contends that Dr. Rivera examined Talbot on August 25, 2010, almost three months after the relevant period, and, therefore, Talbot cannot rely on his opinion for a finding of disability.  (Dkt. Not. 12 at 12-14.)

On June 4, 2010, Talbot filed a secondary application for SSI

---

[6]  With respect to bones and joints, crepitus is the crackling sound or grating sensation produced by rubbing together fragments of fractured bone or dry synovial surfaces of joints.  *See* Dorland's Illustrated Medical Dictionary 391 (28th ed. 1994).

benefits and was found to be disabled as of that date. (Tr. at 12, 133.) Subsequent favorable disability decisions cannot be new and material evidence "where the new decision reflects a worsening of conditions." *Horn v. Comm'r of Soc. Sec.*, No. 13-CV-1218, 2015 WL 4743933, at *22 n.8 (E.D.N.Y. Aug. 10, 2015); *see Rivera v. Colvin*, 592 F. App'x 32, 32-33 (2d Cir. 2015). The Commissioner's decision finding Talbot disabled is not part of the record. Presumably, findings from Dr. Rivera's consultative examination were considered in the later disability determination. Dr. Rivera opined that Talbot had "moderately severe" restrictive lung disease, (Tr. at 878), a diagnosis not found in any medical records during the relevant period, (*id.* at 419-23, 706-09, 790). This suggests that the later disability finding was based, in part, on Talbot's worsening condition and, thus, the ALJ did not err by omitting Dr. Rivera's opinion.

### 5. Talbot's Obesity

Finally, Talbot asserts that the ALJ failed to account for her obesity. (Dkt. No. 11 at 20-22.) Obesity is "a medically determinable impairment," and, when documented in the record, must be consider when evaluating a claimant's disability. *See* SSR 02-1p, 67 Fed. Reg. 57,859, 57,860 (Sept. 12, 2002). Here, the ALJ explicitly evaluated Talbot's obesity, determined

it was not a severe impairment, and found that neither Talbot nor the medical evidence suggested that it caused any limitation. (Tr. at 18); *see Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) (holding that the claimant's obesity did not limit her ability to perform light work when no limitations were identified in physical examinations or medical reports referencing her weight).

Although the ALJ did not reference Talbot's obesity in his RFC analysis, "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006). Rather, "[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [claimant], the claimant's obesity is understood to have been factored into their decisions." *Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (internal quotation marks and citations omitted). Here, the ALJ afforded great weight to the opinion of Dr. Ganesh who examined Talbot on two occasions and noted her weight. (Tr. at 22, 420, 707.) The ALJ incorporated Dr. Ganesh's findings into the RFC, which necessarily factored Talbot's obesity into the determination.

**B.    Credibility**

Next, Talbot claims that substantial evidence did not support the ALJ's unfavorable credibility finding.  (Dkt. No. 11 at 22-24.)  Specifically, Talbot contends the ALJ erred because: (1) her daily activities were so minimal; (2) he failed to consider objective medical evidence; and (3) he failed to credit her work history.  (*Id.* at 23.)  The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration,

15

frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). Because the ALJ is in the best position to assess a claimant's demeanor, the court will not disturb a credibility finding supported by substantial evidence. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010); *Felix v. Astrue*, No. 11-CV-3697, 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012).

Here, the ALJ found that Talbot's impairments could cause the alleged symptoms, but discredited Talbot's subjective complaints about the intensity, persistence, and limiting effects of these impairments. (Tr. at 21.) The ALJ reasoned that because Talbot maintained a reasonable activity level, did not seek treatment from a mental health counselor, had no notable side effects from her medications, and received only conservative treatment for her pain and shortness of breath the alleged severity of her pain was not credible. (*Id.*) Contrary to Talbot's assertion, her daily activities were indicative of her ability to perform light work. *Cf.*

*Lecler v. Barnhart*, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (holding a claimant's daily activities of maintaining his personal hygiene, walking to nearby errands, and occasionally visiting friends did not support his ability to perform *medium* work). As discussed above, Talbot not only cared for her grandchildren, but also performed chores inside the house, completed some errands outside of the house, and visited friends at least once a week. (*Id.* at 67-69, 102-05, 307-10.)

Moreover, the ALJ also considered objective medical evidence in his credibility finding. (*Id.* at 21.) Specifically, the ALJ discredited Talbot's complaints about the limiting effects of her depression because she did not seek medical treatment beyond medication. (*Id.* at 101-02, 274)*; see Arnone*, 882 F.2d at 39; *Stroud*, 2014 WL 4652581, at *11. Additionally, the ALJ identified Talbot's treatment for her pain and shortness of breath as conservative, which is supported by Dr. Keever's progress notes. (*See generally* Tr. at 799-837, 858-872.)

Finally, the ALJ provided specific reasons for his credibility determination, as discussed above, even though he did not explicitly address Talbot's work history. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (determining that "[w]ork history, however, is just one of

many factors . . . considered in assessing credibility") (internal quotation marks and citation omitted).  Accordingly, the ALJ's credibility finding is supported by substantial evidence and not tainted by legal error.

**C.**   **Step Five Determination**

Finally, Talbot contends that the ALJ erred by relying on the VE's response to hypothetical questions in light of an alleged defective RFC determination.  (Dkt. No. 11 at 24-25.)  Specifically, Talbot asserts that the RFC should have incorporated the limitations recommended by Dr. Keever, and the ALJ erred by failing to ask a hypothetical question which incorporated these limitations.  (*Id.*)  The Commissioner disagrees and argues that the ALJ properly relied on the VE's testimony because the RFC was supported by substantial evidence.  (Dkt. No. 12 at 22.) Furthermore, the Commissioner contends that the ALJ's denial at step five was supported by substantial evidence because the VE's responses corresponded with the RFC determination for Talbot and revealed significant available jobs.  (*Id.*)

At step five, a "limited burden" shifts to the Commissioner to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  ALJs may rely on the

testimony of VEs to support their findings. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). When utilizing a VE, the ALJ poses hypothetical questions which must reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the VE's testimony. *See De Leon v. Sec'y of Health & Human Servs.,* 734 F.2d 930, 936 (2d Cir. 1984). When a hypothetical question meets that requirement, and is supported by substantial evidence, VE testimony suffices as substantial evidence to support a step five finding. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010); *see also Salmini*, 371 F. App'x at 114; *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).

Conversely, VE testimony given in response to a hypothetical question that does not present the full extent of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, cannot constitute substantial evidence to support a conclusion of no disability. *See Pardee v. Astrue*, 631 F. Supp. 2d 200, 211-12 (N.D.N.Y. 2009); *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 407 (W.D.N.Y. 2008).

Talbot bootstraps her challenge to the RFC with her opposition to the ALJ's analysis in step five. But, here, as explained above, the RFC determination was supported by substantial evidence. *See Salmini*, 371 F.

19

App'x at 114 ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment"). Thus, the ALJ's hypothetical questions directed to an RFC of light work with limitations for asthma was not defective or deficient as it matched Talbot's abilities. (Tr. at 80-81); *see Walker v. Colvin*, No. 5:12-cv-483, 2013 WL 5434065, at *12 (N.D.N.Y. Sept. 27, 2013) (finding "[a] valid hypothetical question need only incorporate limitations that an [ALJ] finds credible and which are supported by substantial evidence"). In fact, the ALJ went one step further and relied on the VE's testimony about available jobs for an individual with even greater physical restrictions than Talbot with similar age, education, and experience. (Tr. at 23, 82-83.) Again, the VE testified that such jobs existed. (*Id.* at 82-83.) Accordingly, the ALJ properly relied on the VE testimony and his finding of no disability at step five is supported by substantial evidence.

## D.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Talbot's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 26, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge